UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAHID DIWAN, ABDEL ABDEL FATTAH, EZALDIN ABDELSALAM, SERGUEI AKIMOV, ABDALLAH BA, SANJAY BUDHOO, MANUEL DIAZ, FRANKLYN B. FYFFE, SHERIF IBRAHIM, JUSTIN JUNG, ANDRES MORALES, CANDIDO NUNEZ, RONALD SMITH, DUNCAN TASHER, EMAD TAWFIK, PHILLIP VARGAS and NAGI ZAKI, on behalf of themselves and all others similarly situated, | Case No. |
| Plaintiffs, | **COMPLAINT** |
| -against- | |
| TRISTAR CHAUFFEUR MANAGEMENT, INC., ADDISON LEE, INC., AMERICAN LIMOUSINE LLC d/b/a FLYTE TYME WORLDWIDE ADDISON LEE LLC f/d/b/a FLYTE TYME TRANSPORTATION LLC, Defendants. | |

## INTRODUCTION

Plaintiffs SHAHID DIWAN, ABDEL ABDEL FATTAH, EZALDIN ABDELSALAM, SERGUEI AKIMOV, ABDALLAH BA, SANJAY BUDHOO, MANUEL DIAZ, FRANKLYN B. FYFFE, SHERIF IBRAHIM, JUSTIN JUNG, ANDRES MORALES, CANDIDO NUNEZ, RONALD SMITH, DUNCAN TASHER, EMAD TAWFIK, PHILLIP VARGAS and NAGI ZAKI , on behalf of themselves and all others similarly situated, by their undersigned attorneys, allege, upon personal knowledge as to themselves and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This is a lawsuit to recover unpaid wages under the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq., ("FLSA"), the New York Labor Law, Article 19, §§ 650 et. sec. ("NYLL"), and the supporting New York State Department of Labor regulations on behalf of

Defendants' current and former employee drivers. More specifically, Plaintiffs asserts that they and members of the Class, are entitled to recover all tips that were paid by customers to Defendants for work performed by Plaintiffs, liquidated damages, costs and reasonable attorney's fees. The gravamen of the complaint is that Defendants regularly collected tips from its customers and failed to distribute the tips to the drivers who earned the tips. Plaintiffs also assert on behalf of themselves that they are entitled to damages under the NYLL for Defendants' failure to provide wage notices and accurate wage statements.

2.      Defendants are affiliated executive limousine companies which operate throughout the tri-state area and beyond. Defendants employed Plaintiffs and dozens of other current and former drivers.

3.      Pursuant to 29 U.S.C. §216(b), Plaintiffs seek to represent a collective action under the FLSA consisting of "all current and former drivers who were employed by Defendants in any workweek from November 15, 2016 forward, and who were not paid the tips that customers paid to Defendants" (the "Putative Collective Action Members" or "Class").

4.      Plaintiffs also bring this action on behalf of themselves to remedy violations of the NYLL.

5.      Defendants have willfully engaged in a pattern, practice, and policy of unlawful conduct by failing to properly pay Plaintiffs and the Putative Collective Action Members the tips that Defendants collected from their customers.

6.      Defendants have also violated the NYLL by failing to provide Plaintiffs with wage notices and accurate wage statements.

7.     Plaintiffs seek compensatory damages, pre-judgment interest, reasonable attorneys' fees, liquidated damages and all other appropriate legal and equitable relief, pursuant to the FLSA and NYLL.

## PARTIES

**Plaintiffs**

8.     Plaintiff Shahid Diwan ("Diwan") resides in Nassau County, New York.

9.     Diwan was employed as a chauffeur by the Defendants from December 15, 2010 to the present.

10.     Plaintiff Abdel Abdel Fattah ("Fattah") resides in Bergen County, New Jersey.

11.     Fattah was employed as a chauffeur by the Defendants from November 14, 2016 to the present.

12.     Plaintiff Ezaldin Abdelsalam ("Abdelsalam") resides in Hudson County, New Jersey.

13.     Abdelsalam was employed as a chauffeur by the Defendants from July 5, 2017 to the present.

14.     Plaintiff Serguei Akimov ("Akimov") resides in Passaic County, New Jersey.

15.     Akimov was employed as a chauffeur by the Defendants from October 11, 2016 to the present.

16.     Plaintiff Abdallah Ba ("Ba") resides in Bronx County, New York.

17.     Ba was employed as a chauffeur by the Defendants  from on or about September 1, 2016 to the present.

18.     Plaintiff Sanjay Budhoo ("Budhoo") resides in Queens County, New York.

19.    Budhoo was employed as a chauffeur by the Defendants from on or about August 28, 2017 to January 19, 2019.

20.    Plaintiff Manuel Diaz ("Diaz") resides in Queens County, New York.

21.    Diaz was employed as a chauffeur by the Defendants from on or about October 8, 2012 through April 7, 2019.

22.    Plaintiff Franklyn B. Fyffe ("Fyffe") resides in Queens County, New York.

23.    Fyffe was employed as a chauffeur by the Defendants from on or about January 1, 2011 to the present.

24.    Plaintiff Sherif Ibrahim ("Ibrahim") resides in Essex County, New Jersey.

25.    Ibrahim was employed as a chauffeur by the Defendants from approximately January 2010 to May 2019.

26.    Plaintiff Justin Jung ("Jung") resides in Bergen County, New Jersey.

27.    Jung was employed as a chauffeur by the Defendants from on or about August 2016 to September 19, 2019.

28.    Plaintiff Andres Morales ("Morales") resides in Queens County, New York.

29.    Morales was employed as a chauffeur by the Defendants from on or about August 2016 to the present.

30.    Plaintiff Candido Nunez ("Nunez") resides in Kings County, New York.

31.    Nunez was employed as a chauffeur by the Defendants from on or about December 2010 to the present.

32.    Plaintiff Ronald Smith ("Smith") resides in Kings County, New York.

33.    Smith was employed as a chauffeur by the Defendants from on or about September 1, 2015 to the present.

34.    Plaintiff Duncan Tasher ("Tasher") resides in Kings County, New York.

35.    Tasher was employed as a chauffeur by the Defendants from on or about January 1, 2011 to the present.

36.    Plaintiff Emad Tawfik ("Tawfik") resides in Richmond County, New York.

37.    Tawfik was employed as a chauffeur by the Defendants from on or about February 20, 2018 to July 20, 2019.

38.    Plaintiff Phillip Vargas ("Vargas") resides in Fairfield County, Connecticut.

39.    Vargas was employed as a chauffeur by the Defendants from on or about March 2018 to the present.

40.    Plaintiff Nagi Zaki ("Zaki") resides in Middlesex County, New Jersey.

41.    Zaki was employed as a chauffeur by the Defendants from on or about September 2014 to the present.

42.    Each plaintiff worked for Defendants as a driver in the New York City metropolitan area.

**Defendants**

43.    Tristar Chauffeur Management, Inc ("Tristar") is a foreign corporation organized and existing under the laws of the state of Delaware. Upon information and belief, it maintains its principal office at 90 McKee Drive, Mahwah, NJ 07430 and is authorized to do business in New York. Tristar transacts business as a limousine for hire business in multiple states, including New York and New Jersey.

44.     Tristar is an "enterprise engaged in interstate commerce" within the meaning of the FLSA. Tristar has engaged in interstate commerce and has gross revenues exceeding $500,000 in each of the three years preceding the filing of this complaint.

45.     Addison Lee, Inc., ("Addison Lee") is a foreign corporation organized and existing under the laws of the state of Delaware. Upon information and belief, it maintains its principal office at 90 McKee Drive, Mahwah, NJ 07430 and is authorized to do business in New York. Addison Lee transacts business as a limousine for hire business in multiple states, including New York and New Jersey.

46.     Addison Lee is an "enterprise engaged in interstate commerce" within the meaning of the FLSA. Addison Lee has engaged in interstate commerce and has gross revenues exceeding $500,000 in each of the three years preceding the filing of this complaint.

47.     Upon information and belief, American Limousine LLC ("American") is a foreign corporation organized and existing under the laws of the state of New Jersey. Upon information and belief American is a subsidiary of Addison Lee and it maintains its principal place office at 90 McKee Drive, Mahwah, NJ 07430 and is authorized to do business in New York. American transacts business as a limousine for hire business in multiple states, including New York and New Jersey.

48.     Upon information and belief, American does business as Flyte Tyme Worldwide Addison Lee LLC.

49.     American Limousine LLC is an "enterprise engaged in interstate commerce" within the meaning of the FLSA. American has engaged in interstate commerce and has gross revenues exceeding $500,000 in each of the three years preceding the filing of this complaint.

6

50.     Upon information  and belief, Defendants share common ownership and management. Defendants operate as a single-integrated enterprise and/or joint employer with integrated and unified operations.

51.     Upon information and belief, Defendants are subsidiaries of, and/or affiliated with, Addison Lee Group, a London-based company with over £900m in annual revenue.

## JURISDICTION AND VENUE

52.     This Court has original federal question jurisdiction over Plaintiffs' FLSA claims because this case is brought pursuant to the FLSA. This Court has supplemental jurisdiction over the NYLL claims as they are so related to the claims in this action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

53.     Venue is proper within this District pursuant to 28 U.S.C. § 1391, because Defendants do business in this District, because many of the plaintiffs reside in this District, and because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this District.

## FACTUAL ALLEGATIONS

54.     Plaintiffs are or were employed as chauffeurs by Defendants. Most of the plaintiffs were initially employed by Tristar. Upon information and belief, Tristar was bought by Addison Lee Group in or around June 2016. In or around January 2019, Plaintiffs began to receive their paychecks from American Limousine LLC.

55.     At all times material and relevant herein, Defendants were the employers of Plaintiffs within the meaning of 29 U.S.C. §§201 et. seq.

56.    At all relevant times, Plaintiffs were employees of Defendants within the meaning of NYLL§§650 et. seq. and the supporting New York State Department of Labor regulations.

57.    At all relevant times, Defendants possessed the authority and power to hire or terminate Plaintiffs and members of the Class.

58.    At all relevant times, Defendants possessed the authority and power to control the work schedule and conditions of employment of Plaintiffs and members of the Class.

59.    At all relevant times, Defendants possessed the authority and power to determine the rate and method of the payment of wages to Plaintiffs and members of the Class.

60.    At all relevant times, Defendants possessed the authority and power to maintain and/or had unrestricted access to records regarding the employment of Plaintiffs and members of the Class.

## COLLECTIVE ACTION ALLEGATIONS

61.    Plaintiffs and the Putative Collective Action Members ("Putative Class") worked for Defendants as chauffeurs. They were assigned to transport passengers throughout the New York and New Jersey.

62.    Plaintiffs and the Putative Collective Action Members normally worked shifts of 10 to 12 hours, 5 or 6 days per week and were paid a fixed hourly wage.

63.    Defendants charged their customers a either a daily or hourly rate for the services provided by Plaintiffs and the Putative Collective Action Members.

64.    Defendants also collected an additional 20% tip from their customers. For example, when Defendants charged $1000 to a customer for 10 hours of chauffeur services, Defendants collected an additional $200 in tips.

8

65.    The Putative Class consists of Plaintiffs and other similarly situated drivers who were the victims of Defendants' common policies and practices that have violated the Putative Class' rights under the FLSA by misappropriating tips belonging to the Putative Class.

66.    Defendants knew or should have known that the FLSA prohibits employers from keeping tips earned by employees.

67.    Defendants unlawful conduct was willful and caused significant monetary damage to Plaintiffs and the Putative Collective Action Mmebers.

68.    The Putative Collective Action Members would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join this lawsuit. All similarly situated drivers can be easily identified and located by Defendants' records. The similarly situated drivers should be permitted to opt-in to this lawsuit  pursuant to 29 U.S.C § 216(b).

## ALLEGATIONS AS TO INDIVIDUAL PLAINTIFFS

69.    Plaintiffs are or were employed as chauffeurs by Defendants. Most of the plaintiffs were initially employed by Tristar. Upon information and belief, Tristar was bought by Addison Lee Group in or around June 2016. In or around January 2019, Plaintiffs began to receive their paychecks from American Limousine LLC.

**Diwan**

70.    Plaintiff Diwan worked for Defendants from on or around December 15, 2010 to the present. Diwan was paid an hourly rate for the hours that he worked. Throughout the time Diwan worked for Defendants and continuing to the present, Diwan worked shifts of 10 or 12 hours, 5 or 6 days per week. Defendants billed their clients at or around $100 per hour for Diwan's services for daily totals of approximately $1000-$1200.

9

71.     Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Diwan.

72.     Diwan estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Diwan. Defendants did not provide Diwan with any record of the tips, but the precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

73.     Defendants did not provide Diwan with a wage notice at any time throughout his employment.

74.     Defendants did not provide Diwan with accurate wage statements throughout his employment.

**Fattah**

75.     Plaintiff Fattah worked for Defendants from on or around November 14, 2016 to January, 2019. Fattah was paid an hourly rate for the hours that he worked. Throughout the time Fattah worked for Defendants and continuing to the present, Fattah worked shifts of 10 or 12 hours, 5 or 6 days per week. Defendants billed their clients at or around $100 per hour for Fattah's services for daily totals of approximately $1000-$1200.

76.     Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Fattah.

77.     Fattah estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Fattah. Defendants did not provide Fattah with any record of the tips, but the precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

78.     Defendants did not provide Fattah with a wage notice at any time throughout his employment.

79.     Defendants did not provide Fattah with accurate wage statements throughout his employment.

**Abdelsalam**

80.     Plaintiff Abdelsalam worked for Defendants from on or around July 5, 2017 to the present. Abdelsalam was paid an hourly rate for the hours that he worked. Throughout the time Abdelsalam worked for Defendants and continuing to the present, Abdelsalam worked shifts of 10 or 12 hours, 5 or 6 days per week. Defendants billed their clients at or around $100 per hour for Abdelsalam's services for daily totals of approximately $1000-$1200.

81.     Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Abdelsalam.

82.     Abdelsalam estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Abdelsalam. Defendants did not provide Abdelsalam with any record of

the tips, but the precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

83.    Defendants did not provide Abdelsalam with a wage notice at any time throughout his employment.

84.    Defendants did not provide Abdelsalam with accurate wage statements throughout his employment.

**Akimov**

85.    Plaintiff Akimov worked for Defendants from on or around October 11, 2016 to the present. Akimov was paid an hourly rate for the hours that he worked. Throughout the time Akimov worked for Defendants and continuing to the present, Akimov worked shifts of 10 or 12 hours, 5 or 6 days per week. Defendants billed their clients at or around $100 per hour for Akimov's services for daily totals of approximately $1000-$1200.

86.    Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Akimov.

87.    Akimov estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Akimov. Defendants did not provide Akimov with any record of the tips, but the precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

88.    Defendants did not provide Akimov with a wage notice at any time throughout his employment.

89.     Defendants did not provide Akimov with accurate wage statements throughout his employment.

**Ba**

90.     Plaintiff Ba worked for Defendants from on or around September 1, 2016 to the present. Ba was paid an hourly rate for the hours that he worked. Throughout the time Ba worked for Defendants and continuing to the present, Ba worked shifts of 10 or 12 hours, 5 or 6 days per week. Defendants billed their clients at or around $100 per hour for Ba's services for daily totals of approximately $1000-$1200.

91.     Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Ba.

92.     Ba estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Ba. Defendants did not provide Ba with any record of the tips, but the precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

93.     Defendants did not provide Ba with a wage notice at any time throughout his employment.

94.     Defendants did not provide Ba with accurate wage statements throughout his employment.

**Budhoo**

95.    Plaintiff Budhoo worked for Defendants from on or around August 28, 2017 to January, 2019. Budhoo was paid an hourly rate for the hours that he worked. Throughout the time Budhoo worked for Defendants and continuing to the present, Budhoo worked shifts of 10 or 12 hours, 5 or 6 days per week. Defendants billed their clients at or around $100 per hour for Budhoo's services for daily totals of approximately $1000-$1200.

96.    Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Budhoo.

97.    Budhoo estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Budhoo. Defendants did not provide Budhoo with any record of the tips, but the precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

98.    Defendants did not provide Budhoo with a wage notice at any time throughout his employment.

99.    Defendants did not provide Budhoo with accurate wage statements throughout his employment.

**Diaz**

100.    Plaintiff Diaz worked for Defendants from on or around October 8, 2012 to April 7, 2019. Diaz was paid an hourly rate for the hours that he worked. Throughout the time Diaz worked for Defendants and continuing to the present, Diaz worked shifts of 10 or 12 hours, 5 or

14

6 days per week. Defendants billed their clients at or around $100 per hour for Diaz's services for daily totals of approximately $1000-$1200.

101.    Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Diaz.

102.    Diaz estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Diaz. Defendants did not provide Diaz with any record of the tips, but the precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

103.    Defendants did not provide Diaz with a wage notice at any time throughout his employment.

104.    Defendants did not provide Diaz with accurate wage statements throughout his employment.

**Fyffe**

105.    Plaintiff Fyffe worked for Defendants from on or around January 2011 to the present. Fyffe was paid an hourly rate for the hours that he worked. Throughout the time Fyffe worked for Defendants and continuing to the present, Fyffe worked shifts of 10 or 12 hours, 5 or 6 days per week. Defendants billed their clients at or around $100 per hour for Fyffe's services for daily totals of approximately $1000-$1200.

106.   Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Fyffe.

107.   Fyffe estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Fyffe. Defendants did not provide Fyffe with any record of the tips, but the precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

108.   Defendants did not provide Fyffe with a wage notice at any time throughout his employment.

109.   Defendants did not provide Fyffe with accurate wage statements throughout his employment.

**Ibrahim**

110.   Plaintiff Ibrahim worked for Defendants from on or around 2010 to May 2019. Ibrahim was paid an hourly rate for the hours that he worked. Throughout the time Ibrahim worked for Defendants and continuing to the present, Ibrahim worked shifts of 10 or 12 hours, 5 or 6 days per week. Defendants billed their clients at or around $100 per hour for Ibrahim's services for daily totals of approximately $1000-$1200.

111.   Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Ibrahim.

16

112.    Ibrahim estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Ibrahim. Defendants did not provide Ibrahim with any record of the tips, but the precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

113.    Defendants did not provide Ibrahim with a wage notice at any time throughout his employment.

114.    Defendants did not provide Ibrahim with accurate wage statements throughout his employment.

**Jung**

115.    Plaintiff Jung worked for Defendants from on or around August, 2016 to September, 2019. Jung was paid an hourly rate for the hours that he worked. Throughout the time Jung worked for Defendants and continuing to the present, Jung worked shifts of 10 or 12 hours, 5 or 6 days per week. Defendants billed their clients at or around $100 per hour for Jung's services for daily totals of approximately $1000-$1200.

116.    Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Jung.

117.    Jung estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Jung. Defendants did not provide Jung with any record of the tips, but the

precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

118.    Defendants did not provide Jung with a wage notice at any time throughout his employment.

119.    Defendants did not provide Jung with accurate wage statements throughout his employment.

**Morales**

120.    Plaintiff Morales worked for Defendants from on or around August, 2016 to the present. Morales was paid an hourly rate for the hours that he worked. Throughout the time Morales worked for Defendants and continuing to the present, Morales worked shifts of 10 or 12 hours, 5 or 6 days per week. Defendants billed their clients at or around $100 per hour for Morales's services for daily totals of approximately $1000-$1200.

121.    Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Morales.

122.    Morales estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Morales. Defendants did not provide Morales with any record of the tips, but the precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

123.    Defendants did not provide Morales with a wage notice at any time throughout his employment.

124.    Defendants did not provide Morales with accurate wage statements throughout his employment.

**Nunez**

125.    Plaintiff Nunez worked for Defendants from on or around December 2010 to the present. Nunez was paid an hourly rate for the hours that he worked. Throughout the time Nunez worked for Defendants and continuing to the present, Nunez worked shifts of 10 or 12 hours, 5 or 6 days per week. Defendants billed their clients at or around $100 per hour for Nunez's services for daily totals of approximately $1000-$1200.

126.    Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Nunez.

127.    Nunez estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Nunez. Defendants did not provide Nunez with any record of the tips, but the precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

128.    Defendants did not provide Nunez with a wage notice at any time throughout his employment.

129.    Defendants did not provide Nunez with accurate wage statements throughout his employment.

**Smith**

130.    Plaintiff Smith worked for Defendants from on or around September 2015 to the present. Smith was paid an hourly rate for the hours that he worked. Throughout the time Smith worked for Defendants and continuing to the present, Smith worked shifts of 10 or 12 hours, 5 or 6 days per week. Defendants billed their clients at or around $100 per hour for Smith's services for daily totals of approximately $1000-$1200.

131.    Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Smith.

132.    Smith estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Smith. Defendants did not provide Smith with any record of the tips, but the precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

133.    Defendants did not provide Smith with a wage notice at any time throughout his employment.

134.    Defendants did not provide Smith with accurate wage statements throughout his employment.

**Tasher**

135.    Plaintiff Tasher worked for Defendants from on or around 2011 to the present. Tasher was paid an hourly rate for the hours that he worked. Throughout the time Tasher worked for Defendants and continuing to the present, Tasher worked shifts of 10 or 12 hours, 5 or 6 days

per week. Defendants billed their clients at or around $100 per hour for Tasher's services for daily totals of approximately $1000-$1200.

136.    Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Tasher.

137.    Tasher estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Tasher. Defendants did not provide Tasher with any record of the tips, but the precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

138.    Defendants did not provide Tasher with a wage notice at any time throughout his employment.

139.    Defendants did not provide Tasher with accurate wage statements throughout his employment.

**Tawfik**

140.    Plaintiff Tawfik worked for Defendants from on or around February 20, 2018 to July 20, 2019. Tawfik was paid an hourly rate for the hours that he worked. Throughout the time Tawfik worked for Defendants and continuing to the present, Tawfik worked shifts of 10 or 12 hours, 5 or 6 days per week. Defendants billed their clients at or around $100 per hour for Tawfik's services for daily totals of approximately $1000-$1200.

141.    Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Tawfik.

142.    Tawfik estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Tawfik. Defendants did not provide Tawfik with any record of the tips, but the precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

143.    Defendants did not provide Tawfik with a wage notice at any time throughout his employment.

144.    Defendants did not provide Tawfik with accurate wage statements throughout his employment.

**Vargas**

145.    Plaintiff Vargas worked for Defendants from on or around                    to
. Vargas was paid an hourly rate for the hours that he worked. Throughout the time Vargas worked for Defendants and continuing to the present, Vargas worked shifts of 10 or 12 hours, 5 or 6 days per week. Defendants billed their clients at or around $100 per hour for Vargas's services for daily totals of approximately $1000-$1200.

146.    Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Vargas.

22

147.    Vargas estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Vargas. Defendants did not provide Vargas with any record of the tips, but the precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

148.    Defendants did not provide Vargas with a wage notice at any time throughout his employment.

149.    Defendants did not provide Vargas with accurate wage statements throughout his employment.

**Zaki**

150.    Plaintiff Zaki worked for Defendants from on or around September 2014 to the present. Zaki was paid an hourly rate for the hours that he worked. Throughout the time Zaki worked for Defendants and continuing to the present, Zaki worked shifts of 10 or 12 hours, 5 or 6 days per week. Defendants billed their clients at or around $100 per hour for Zaki's services for daily totals of approximately $1000-$1200.

151.    Defendants collected from their clients an additional 20% tip, which on an average day was $200-$250. Although Defendants collected these tips from its clients, Defendants did not then give the tips to Zaki.

152.    Zaki estimates that each week of his employment Defendants collected on average between $1,000 and $1,200 in tips for services he provided. Defendants kept these tips and did not give them to Zaki. Defendants did not provide Zaki with any record of the tips, but the

23

precise amount of the withheld tips should be among the records Defendants were obligated to maintain.

153.     Defendants did not provide Zaki with a wage notice at any time throughout his employment.

154.     Defendants did not provide Zaki with accurate wage statements throughout his employment.

## FIRST CAUSE OF ACTION

### FLSA violations- Tip Misappropriation
### Brought by Plaintiffs on Behalf of Themselves and the Putative Class Members

155.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

156.     Throughout the statute of limitations period covered by these claims, Defendants were and continue to be "employers" engaged in interstate commerce within the meaning of the FLSA and employed Plaintiffs and the Putative Collective Action Members.

157.     At all relevant times, Defendants operated under a policy and practice of failing to pay Plaintiffs and the Putative Collective Action Members the tips they collected from their customer.

158.     Plaintiffs, on behalf of themselves and the Putative Collective Action Members, seek damages in the amount of their respective misappropriated tips, liquidated damages as provided by the FLSA, pre and post judgment interest, attorneys' fees and costs and such other legal and equitable relief as this Court deems just and proper.

**SECOND CAUSE OF ACTION**
**NYLL Violation- Tip Misappropriation**
**Brought by Plaintiffs Individually**

159.   Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

160.   It is unlawful under New York law for an employer to keep tips, gratuities or service charges collected for customers for services provided by employees.

161.   At all relevant times, Defendants collected tips from its customers and failed to pay the tips to Plaintiffs.

162.   At all relevant times, Defendants willfully, regularly, repeatedly and knowingly failed to pay Plaintiffs the tips collected from their customers.

163.   Plaintiffs seek damages in the amount of their respective misappropriated tips, liquidated damages as provided by the NYLL, attorneys' fees and costs, pre and post judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**THIRD CAUSE OF ACTION**
**NYLL Violation- Failure to Provide Wage Notice**
**Brought by Plaintiffs Individually**

164.   Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

165.   At all relevant times, Defendants were covered employers under the NYLL.

166.   The NYLL and Wage Theft Prevention Act (WTPA), as well as the NYS DOL regulations, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employees rate of pay.

167.     Defendants failed to supply Plaintiffs with notice as required by the NYLL in English or in the language identified by Plaintiffs as Plaintiffs' primary language, containing Plaintiffs' rate or rates of pay and the basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL§ 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer.

168.     Due to Defendants' violation of NYLL §195(1), Plaintiffs are entitled to recover from Defendants damages of $50 per workday during which the violation occurred or persisted, up to a maximum of $5,000, attorneys' fees, and costs and disbursements.

## FOURTH CAUSE OF ACTION
### NYLL Violation- Failure to Provide Wage Notice
### Brought by Plaintiffs Individually

169.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

170.     The NYLL and WTPA require employers to provide employees with an accurate wage statement each time they are paid.

171.     Defendants failed to provide to Plaintiffs wage statements that accurately listed the true gross and net wages earned by Plaintiffs.

172.    Due to Defendants' violation of NYLL §195(3), Plaintiffs are entitled to recover from Defendants damages of $250 per workday during which the violation occurred, up to a maximum of $5,000, attorneys' fees, and costs and disbursements.

## **PRAYER FOR RELIEF**

WHEREFORE , Plaintiffs pray for relief as follows:

(a) A Declaration that Defendants have violated the FLSA and other applicable laws;

(b) Designation of this action as a collective action on behalf of the Putative Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitted them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

(c) Designation of Plaintiffs as Representatives of the Putative Collective Action Members;

(d) Designation of Plaintiffs' Counsel as Counsel for the Putative Collective Action Members;

(e) An award of damages, according to proof, including the FLSA and NYLL liquidated damages, to be paid by Defendants;

(f) Penalties available under applicable laws;

(g) Costs of action incurred herein, including expert fees;

(h) Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663, and other applicable statutes;

(i) Pre-judgment and post-judgment interest, as provided by law; and

(j) Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to FED. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated: Lake Success, New York
      November 27, 2019

                  Yours, etc.

                  VISHNICK MCGOVERN MILIZIO LLP

                  By:    Avrohom Gefen
                  3000 Marcus Avenue, Suite 1E9
                  Lake Success, New York 11042
                  (516) 437-4385
                  agefen@vmmlegal.com